UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD HAMANN, JOHN HAMANN,
and LISA HAPMAN,

                Plaintiffs,                Case Number 20-10849
v.                                                Honorable David M. Lawson

CHARTER TOWNSHIP OF VAN BUREN,
MATTHEW RASCHKE, CHARTER
TOWNSHIP OF CANTON, BRIAN ZINSER,
CITY OF LIVONIA, ROBERT LOWES,
CITY OF WAYNE, ABRAHAM HUGHES,
BENJAMIN GARRISON, MAHMOUD M. AWAD,
and SARAH DEYOUNG,

                Defendants.

_____/

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS CERTAIN COUNTS BY CITY OF WAYNE DEFENDANTS AND DEFENDANT GARRISON AND GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS ON CERTAIN COUNTS BY CANTON AND LIVONIA DEFENDANTS**

Plaintiffs Ronald and John Hamann are licensed medical marijuana growers and operated marijuana production facilities in the cities of Wayne and Garden City, Michigan. The individual defendants, members of a multi-jurisdictional task force, raided those facilities in May 2015, seized property, froze assets, and prosecuted the plaintiffs. After the searches were declared unlawful and the cases dismissed, the plaintiffs brought this civil rights case against the defendants in April of last year. Some of the individual law enforcement defendants and their corresponding municipalities have filed various motions challenging three of the eight counts of the amended complaint that allege unlawful search and seizure, raising several immunity and timeliness defenses. One issue — whether the plaintiffs filed their case before the statute of limitations expired — is dispositive. The plaintiffs contend that their search-and-seizure claims did not accrue

until the underlying state prosecutions terminated in their favor.  However, governing law holds that the claims accrued at the time of the unlawful conduct.  Because the plaintiffs did not file their complaint within three years of the relevant events, it is untimely and counts 1, 6, and 7 must be dismissed.

I.

Plaintiffs Ronald and John Hamann obtained medical marijuana growers licenses after Michigan legalized the production and sale of medical marijuana.  They operated a medical marijuana growing and distribution business at three residences, two in the City of Wayne and one in Garden City, Michigan.  The defendants apparently believed that the operations were illegal and commenced an investigation.  Part of that investigation included the execution of search warrants in 2015.

The police authorities spearheading the investigation were members of the Western Wayne Narcotics Team (WWNT), a multi-jurisdictional task force overseen by the Michigan State Police and comprised of officers from the Cities of Wayne and Livonia, the Townships of Van Buren and Canton, and the Michigan State Police.

The plaintiffs allege that the WWNT obtained search warrants based on affidavits that did not establish probable cause.  The warrants were executed on three addresses on May 4, 2015.  Throughout the process, defendant Sarah DeYoung, an assistant Wayne County prosecutor, reviewed the search warrant affidavits for all three addresses and advised the officers that they had probable cause to search those premises.

On April 29, 2015, defendant City of Wayne police officer Abraham Hughes provided information that was used to obtain a search warrant of a multi-family dwelling that Ronald Hamann owned on Elizabeth Street in the City of Wayne.  Hughes told Van Buren Township

detective defendant Matthew Raschke that, after receiving multiple complaints, he smelled a strong odor of "fresh marijuana coming from the residence." Hughes knocked on the door and heard dogs barking in the back yard, but no one answered.

That same day, detective Raschke surveilled the building and could smell marijuana from about 25 feet away. Raschke returned the next day, again smelled marijuana, and observed security cameras and commercial-grade air conditioning units attached to the building. He then drafted an affidavit and search warrant for adjoining addresses on Elizabeth Street, City of Wayne, alleging an illegal marijuana grow operation. A magistrate signed the warrant on May 4, 2015.

Later that day, Raschke (City of Wayne police), Hughes (Van Buren Township police), defendant police officers Brian Zinzer (Canton Township police), Robert Lowes (City of Livonia police), and Benjamin Garrison (Michigan State Police) executed the search warrant on the two Elizabeth Street addresses where they found and detained plaintiff Lisa Hapman for about eight hours and seized Ronald and John Hamann's property. Officers interviewed Hapman, who stated that she had been trimming the marijuana plants for Ronald and John Hamann since 2013. She also indicated that the brothers shared a residence in Garden City, Michigan.

The plaintiffs allege that officer Zinzer subsequently arrested Ronald Hamann sometime after the raid of the Wayne residences, and he was held overnight at the Canton Township jail.

The day the WWNT raided the City of Wayne residences, defendant Livonia police detective Robert Lowes drafted a search warrant and affidavit for an address on Rush Street in Garden City, a ranch-style home where plaintiff John Hamann lived. In support of the search warrant, Lowes referenced the WWNT raid of the Wayne addresses as well as Lisa Hapman's on-site interview. He corroborated the address of the Garden City residence provided by Hapman with records associated with John Hamann's Michigan driver's license.

The search warrant was signed and executed the same day, May 4, 2015. The plaintiffs allege that the individually named police officer defendants unlawfully searched the Garden City address and seized Ronald and John's personal property. The officers then arrested John Hamann. He also was released one day later on, May 5.

The plaintiffs allege that when the defendants executed the search warrants, they seized personal property valued at $46,563.88. Some of the defendants also froze Ronald and John Hamann's financial assets, even accounts that were not related to the medical marijuana grow operation.

The same day, defendant Michigan State Police trooper Benjamin Garrison, using information discovered during the raids, drafted and swore to warrants to seize and freeze three of Ronald Hamann's financial accounts. Livonia detective Lowes also relied on that information to prepare and swear to an affidavit to seize and freeze John Hamann's credit union account.

On September 2, 2015, the Wayne County Prosecutor's office then brought a forfeiture action against the seized property belonging to Ronald and John Hamann. That action was dismissed on December 3, 2015, because the Prosecutor's Office failed to serve the interested parties and the summons expired.

About two years later, on March 10, 2017, the plaintiffs were each charged in the 29th District Court in Wayne, Michigan, with two counts of manufacturing and delivering between five and 45 kilograms of marijuana. In June 2017, Officer Raschke arrested John Hamman on a felony warrant issued in connection with those charges. John Hamman subsequently was charged with one count of manufacturing and delivering marijuana in the 21st District Court in Garden City, Michigan.

The plaintiffs allege that on November 16, 2017, defendant Mahmoud Awad, an assistant Wayne County prosecutor, submitted "false or misleading testimony" to the circuit court in Detroit, Michigan, when he filed an affidavit representing that good cause existed to reinstate the civil forfeiture action against Ronald and John Hamann's property. The forfeiture action against the property was reinstated on December 1, 2017.

The criminal charges and forfeiture action against the plaintiffs eventually were dismissed. On February 26, 2018, a state district judge in 21st District Court found that the search warrant for the Garden City address was defective because probable cause for the warrant was "remarkabl[y] deficient, almost ridiculously deficient." He dismissed the criminal charge against John Hamann with prejudice. Shortly thereafter, the Wayne County prosecutor's office moved to dismiss without prejudice all charges against the plaintiffs in the 29th District Court related to the searches of the Wayne addresses; those charges were dismissed on April 2, 2018. Finally, on May 11, 2018, a Wayne County circuit judge ordered that Ronald and John Hamann's property be returned to them because the forfeiture claim failed to conform with the statutory timing and prompt filing requirements, and because the underlying search of the Garden City address lacked probable cause.

The plaintiffs filed the present lawsuit on April 4, 2020 against Van Buren Township, Canton Township, the City of Livonia, the City of Wayne, and police officers Raschke, Zinzer, Lowes, Hughes, and Garrison under 42 U.S.C. § 1983. They amended the complaint on September 29, 2020, adding Wayne County assistant prosecutors DeYoung and Awad. The amended complaint alleges that defendants Raschke, Zinzer, Lowes, Hughes, Garrison, and DeYoung unlawfully searched and seized their property in violation of the Fourth Amendment (Count 1); defendant Raschke unlawfully arrested them without probable cause in violation of the Fourth Amendment (Count 2) and state law (Count 3); Rashke maliciously prosecuted them in violation

of the Fourth Amendment (Count 4) and state law (Count 5); the individual defendants were grossly negligent during the investigation, searches, and seizures (Count 6); the municipal defendants violated the plaintiffs' constitutional rights by failing to train, supervise, and discipline the individual defendants and by maintaining a custom or policy of falsely arresting citizens (Count 7); and defendant Awad deprived the plaintiffs of liberty and property without due process in violation of the Fourteenth Amendment (Count 8).

The City of Wayne and defendant Hughes (the Wayne defendants), and Michigan State Trooper Garrison each have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Canton Township and defendant Zinzer (the Canton defendants), and the City of Livonia and defendant Lowes (the Livonia defendants) each have filed motions for judgment on the pleadings. The municipal defendants (Wayne, Canton, Livonia, and their respective officers) each argue that the plaintiffs' claims in Counts 1, 6, and 7 are barred by the applicable statute of limitations. Defendant Livonia separately (and alternatively) argues that the plaintiffs failed to plead facts that establish municipal liability. Garrison argues that he is shielded against the federal constitutional claims by qualified immunity and that governmental immunity protects him from the gross negligence claim.

II.

Both sets of motions are governed by the same legal standards. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) calls on the same standards that govern motions to dismiss filed under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). The standards are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiff is

entitled to legal relief if the court accepts all the facts in the complaint. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The plaintiffs' Fourth Amendment claims are brought via 42 U.S.C. § 1983. Section 1983 does not provide a statute of limitations. Instead, the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury in the forum state. *McCune v. City of Grand Rapids,* 842 F.2d 903, 905-06 (6th Cir.1988) (citing *Wilson v. Garcia,* 471 U.S. 261, 276-280 (1985)). Michigan's three-year statute of limitations for personal injury claims, Mich. Comp. Laws Ann. § 600.5805(8), "governs section 1983 actions when the cause of action arises in Michigan," *McCune,* 842 F.2d at 905-06.

The statute of limitations begins to run when the cause of action accrues, which, in a section 1983 action, "is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Wallace v.*

*Kato*, 549 U.S. 384, 388 (2007) (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quotation marks and citations omitted)).

The dispute presented by these motions is when a Fourth Amendment claim accrues where that claim is based on the unlawful search and seizure of property that will be used as evidence in a future criminal prosecution. The plaintiffs insist that their claims did not accrue until the state court criminal actions terminated in their favor.

*Heck v. Humphrey*, 512 U.S. 477 (1994), provides the foundation for the plaintiffs' argument. *Heck* was not a statute of limitations case; it was a decision that helped outlined the contours and distinctions between habeas corpus actions and section 1983 damage actions. The Court reaffirmed that when a plaintiff bringing a civil rights action under section 1983 that "challenges the fact or duration of his confinement and seeks immediate or speedier release," the case must be viewed as a habeas corpus action and state remedies must be exhausted. *Id.* at 481(citing *Preiser v. Rodriguez,* 411 U.S. 475 (1973)). Therefore, if a plaintiff's section 1983 action "would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" by executive order, reversal on direct appeal, or writ of habeas corpus. *Id.* at 487.

The plaintiffs argue, based on this requirement, that their claims under the Fourth Amendment could not have accrued until the state court cases terminated in their favor. In *Heck*, however, the Court cautioned that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487. And in a footnote, the Court suggested as an example "a suit for damages attributable to an allegedly unreasonable search[, which] may lie even if the challenged search

produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." The Court explained that "[b]ecause of doctrines like [good faith,] independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* at 487 n.7.

That point was brought home in *Wallace v. Kato*, a statute of limitations case, where the plaintiff brought a section 1983 case for damages resulting from an arrest that violated the Fourth Amendment. 549 U.S. at 387. The Court, characterizing the plaintiff's claim as false imprisonment, held that the claim accrued when the arrest occurred and he was taken before a judicial officer, not when the state dismissed the charges against him and released him months later. *Id.* at 390. The Court held that the rule in *Heck* — which imposed a favorable-termination requirement — did not defer the accrual date because there was no "outstanding criminal judgment." *Id.* at 393. The Court declined to adopt a rule that "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Ibid.*

Following *Heck*, the Sixth Circuit held in *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 399 (6th Cir. 1999), that the plaintiff's unlawful search cause of action under section 1983 did not accrue, for statute of limitations purposes, until criminal charges against him were dismissed. However, "the Sixth Circuit explicitly recognized that *Wallace* 'abrogates the holding in *Shamaeizadeh*.'" *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 639 (6th Cir. 2007) (quoting *Fox v. DeSoto,* 489 F.3d 227, 233 (6th Cir.2007) ("In no uncertain terms, . . . the Court in *Wallace* clarified that the *Heck* bar had no application in the pre-conviction context.").

Thereafter, the Sixth Circuit and district courts in the circuit consistently have held that a section 1983 claim for an improper search and seizure of property accrues on the date the search and seizure takes place. *Harper v. Jackson*, 293 Fed. Appx. 389, 291 n.1 (6th Cir. 2008) (plaintiff's claims accrued on the date of the alleged illegal search and seizure); *Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008) (same); *Trust v. Bartle*, No. 12-14412, 2016 WL 5661573, at *3 (E.D. Mich. Sept. 30, 2016) (same); *Meeks v. Larsen*, 999 F. Supp. 2d 968, 980 (E.D. Mich. 2014), *aff'd,* 611 F. App'x 277 (6th Cir. 2015) (same); *see also Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020) (same); *Mills v. City of Covina*, 921 F.3d 1161, 1166 (9th Cir. 2019) (same). Under that reasoning, the plaintiffs' claims based on unlawful search and seizure — that is, counts 1 (search and seizure of property), 6 (gross negligence), and 7 (municipal liability) of the amended complaint — accrued on May 4, 2015, when their residences were searched and their property was seized. The complaint in this case was not filed until April 4, 2020. Those claims, therefore, are untimely.

The plaintiffs argue that the Court should take another look at *Heck*'s requirement of favorable termination in light of the Supreme Court's more recent decision in *McDonough v. Smith*, --- U.S. ---, 139 S. Ct. 2149 (2019), which held that an evidence fabrication claim does not accrue until after related criminal proceedings have been terminated. The plaintiff in that case alleged that the state charged and prosecuted him for election fraud based on phony evidence manufactured by a prosecutor pursuing a vendetta. He was acquitted by a jury at a second trial following a mistrial. His section 1983 suit did not imply the invalidity of a conviction, because there never was a conviction. The Supreme Court analogized the plaintiff's fabricated evidence claim to a malicious prosecution claim, and noted that it "often decides accrual questions by referring to the common-law principles governing analogous torts." 139 S. Ct. at 2156 (citing

*Wallace*, 549 U.S. at 388; *Heck*, 512 U.S. at 483). Those common-law principles fortified the comparison of the two causes of action, and therefore also supported the same application of the favorable-termination rule as in *Heck*, even though McDonough's conviction was "merely 'anticipated.'" *Id.* at 2157. The Court explained that

> his claims challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in *Heck* challenged the validity of his conviction. And the pragmatic considerations discussed in *Heck* apply generally to civil suits within the domain of habeas corpus, not only to those that challenge convictions. The principles and reasoning of *Heck* thus point toward a corollary result here: There is not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run.

*Id.* at 2158 (quotation marks and citations omitted). !

That analogy has not yet held sway with the Supreme Court for claims based on unlawful searches and seizures under the Fourth Amendment. The Court has identified the competing arguments for applying the favorable-termination rule, and therefore deferring the accrual of the cause of action, for a Fourth Amendment unlawful arrest claim. *See Manuel v. City of Joliet, Ill.*, --- U.S. ---, 137 S. Ct. 911, 921-22 (2017). But federal courts consistently have held that improper property seizure claims accrue at the time of the seizure, including in cases decided after *McDonough*. *See, e.g.*, *Moore v. Moore*, 19-01634, 2019 WL 6683171, at *4 (N.D. Ohio Dec. 6. 2019) ("A claim under § 1983 for improper search and seizure accrues at the time the search and seizure takes place so long as the plaintiff is aware it is taking place") (citing *Harper*, 293 F. App'x. 389, 291 n.1); *Hagans v. Nassau Cnty. Police Dep't*, 18-1918, 2020 WL 1289529, *5 (E.D. N.Y. Mar. 18, 2020) (same).

*McDonough* does not alter the principle that a plaintiff has a complete and present cause of action and can file suit and obtain relief for an unlawful search and seizure at the time the search

occurs. *See Heck*, 512 U.S. at 487 n.7. It follows, then, that the three-year statute of limitations on the plaintiffs' claims attaching the 2015 search-and-seizure expired well before they file their complaint in 2020.

### III.

Because the plaintiffs' claims based on unconstitutional search and seizure of property (Count 1), gross negligence based on the same conduct (Count 6), and municipal liability also based on the searches and seizure of the plaintiffs' property (Count 7) are untimely, the Court need not address the respective defendants' alternate arguments in support of dismissal of those counts.

Accordingly, it is **ORDERED** that the Wayne defendants motion to dismiss (ECF No. 19), defendant Garrison's motion to dismiss (ECF No. 28), the Canton defendants' motion for judgment on the pleadings (ECF No. 36), and the Livonia defendants' motion for judgment on the pleadings (ECF Nos. 40, 43) are **GRANTED**.

It is further **ORDERED** that Counts 1, 6, and 7 of the amended complaint are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the City of Wayne, Abraham Hughes, Benjamin Garrison, Canton Township, Brian Zinzer, the City of Livonia, and Robert Lowes are **DISMISSED** as defendants from this action.

It is further **ORDERED** that the motion by defendants City of Wayne and Hughes to file a supplemental memorandum (ECF No. 79) is **DENIED as moot**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: February 11, 2021