UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD HAMANN, JOHN HAMANN,
and LISA HAPMAN,

                      Plaintiffs,                    Case Number 20-10849

v.                                      Honorable David M. Lawson

CHARTER TOWNSHIP OF VAN BUREN,
MATTHEW RASCHKE, MAHMOUD M. AWAD,
and SARAH DeYOUNG,

                      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Ronald and John Hamann, licensed medical marijuana growers, were prosecuted by Van Buren Township and Wayne County, Michigan officials for state law controlled substance violations, and had their property seized in a forfeiture action. After the criminal and forfeiture cases were dismissed, all three plaintiffs brought civil rights claims against the named defendants and others. In a previous opinion, the Court dismissed several defendants and three of eight counts of the amended complaint because they were untimely. The remaining defendants now move for summary judgment. The claims against defendants DeYoung and Van Buren Township track the counts of the amended complaint already dismissed on statute of limitations grounds, and one of the claims against defendant Raschke is also untimely. That leaves state and federal claims against Raschke for false arrest and malicious prosecution, and a claim against defendant Awad, a state assistant prosecutor, for deprivation of liberty without due process of law. For the reasons discussed below, Raschke is entitled to a judgment in his favor as a matter of law, but Awad is not entitled to either qualified immunity or absolute immunity, and he makes no other arguments in support of his motion. Therefore, except defendant for Awad, the Court will grant the motions for

summary judgment in favor of all the remaining defendants and dismiss those defendants from the case.

## I.  Facts and Proceedings

Most of the facts recited in the summary judgment motion papers are uncontested, except as noted below.

In 2008, Michigan enacted a law that allowed individuals to use marijuana to treat certain medical and psychological ailments and permitted certain qualified persons, called "caregivers," to grow and distribute so-called medical marijuana.  The state legislature enacted comprehensive legislation that established strict limits on how much marijuana could be cultivated, possessed, processed, and sold.  It also established requirements for those who sought a license to manufacture and distribute marijuana to qualified users, referred to as "patients."  *See* Mich. Comp. Laws § 333.26424.  The State since has relaxed many of those restrictions, but those changes did not occur until 2019, well after the events in this case occurred.

### A.  The Search Warrants

Plaintiffs Ronald and John Hamann obtained medical marijuana growers licenses around 2013.  They operated a medical marijuana growing and distribution business at two residences within a duplex in the City of Wayne, Michigan.  The Hamanns purchased the duplex to grow medical marijuana.  They primarily used one side of the duplex, 4428 Elizabeth Street, for this purpose.  The other side, 4430 Elizabeth Street, primarily served as Ronald Hamann's residence, although Ronald treated the units as one and lived and grew marijuana throughout.  For example, Ronald always showered in 4428 and grew marijuana plants in the basement of 4430.  A notice was posted outside one of the entrances to the duplex noting that a medical marijuana facility was operated inside.  Ronald's girlfriend, plaintiff Lisa Hapman, cleaned both units and helped trim

the marijuana plants, tasks Ronald paid her to complete.  John Hamann did not live at the duplex, instead residing with his uncle in Garden City, Michigan.

Beginning in 2014, the City of Wayne Police Department received ten to twenty complaints about the duplex, most of them reporting a smell of marijuana emanating from there.  Officer Abraham Hughes investigated the complaints on April 29, 2015 and smelled marijuana.  Hughes also noticed that the basement windows of the duplex had been blacked out.  Hughes called Detective Matthew Raschke about the duplex because Raschke was part of the Western Wayne Narcotics Team (WWNT), a multi-jurisdictional task force overseen by the Michigan State Police and comprised of officers from the Cities of Wayne and Livonia, the Townships of Van Buren and Canton, and the Michigan State Police.

Raschke brought the tip to his supervisor, who told Raschke to investigate further.  Raschke went to the duplex on April 29 and again on April 30, 2015.  He smelled marijuana from 25 feet away.  He also saw security cameras, multiple air conditioning units, blacked-out windows, and black pots stacked in the back yard, all features Raschke believed to be consistent with an "out-of-compliance" marijuana-growing operation.  Raschke brought this information to his supervisor and at his direction used the information to obtain a warrant for electric company records on the duplex.  The electric company told Raschke that the duplex consumed about five times as much energy as a normal house.  Raschke then drafted a search warrant and affidavit for the two duplex units, which a supervisor again reviewed.  Assistant prosecutor Sarah DeYoung approved the application and affidavit, and a magistrate authorized the warrant, indicating that Raschke had probable cause to search the units.

The WWNT executed the search warrant on May 4, 2015.  Raschke remained on the perimeter of the property while other members of the task force completed the initial raid.  Officers

found and detained plaintiff Lisa Hapman for at least five hours, and officers remained at the duplex for nine to ten hours.  Raschke interviewed Hapman, who stated that she had been trimming the marijuana plants since 2013 and that John gave Ronald Hamann money to pay her for trimming and cleaning.  She also stated that John lived at Ronald's brother's residence in Garden City, Michigan.  Hapman was not arrested.  Ronald Hamann eventually arrived at the property, where he was arrested and brought to the Canton Police Department.  He remained there overnight and was released the next day.

Following the raid on the duplex, Livonia police detective Robert Lowes drafted a search warrant and affidavit for the Garden City address where John Hamann lived, 29769 Rush Street. In support of the search warrant, Lowes referenced the Elizabeth Street raid as well as Hapman's on-site interview.  He corroborated the address of the Rush Street residence provided by Hapman with records associated with John Hamann's Michigan driver's license.  Raschke helped draft the affidavit.

The Rush Street search warrant was signed and executed later the same day, May 4, 2015. Officers found, detained, and arrested John Hamann at the Rush Street residence.  John was brought to the Canton Police Department, where he was interviewed by Canton Police Officer Brian Zinser.  Raschke was present at the interview, although he did not participate in the Rush Street raid or search.  According to Raschke, John admitted that he and Ronald kept comingled marijuana plants at Elizabeth Street and that he sold marijuana to non-patients.  Text messages recovered from John's and Ronald's phones corroborate the interview.  The text messages indicate that John sold marijuana to "Stewy," "Andy Pew," "mooch," and "hoochie," none of whom were John's registered patients.

B.  The Seizures and Forfeiture of Property

While executing the search warrant at the Elizabeth Street duplex, officers seized marijuana plants, marijuana, drying nets, ballasts, a digital scale, financial documents, bank statements, utility receipts, cell phones, a computer tower and hard drive, two medical marijuana cards, four expired medical marijuana cards, $1,257 in cash, and a Chevy HHR, among other items.  From Rush Street, officers seized marijuana, marijuana wax, three rifles, one shotgun, four medical marijuana cards, a cell phone, a tablet, documents, $3,160 in cash, and a Chrysler sedan.  The plaintiffs allege that the seized property altogether was valued at $46,456.33.

There is consensus on how many marijuana *plants* officers seized, and agreement that they all came from the Elizabeth Street duplex.  Detective Zinser recorded seizing 18 marijuana plants from what he described as the northwest grow room, and 51 marijuana plants from what he described as the southeast grow room.  An expert hired by the plaintiffs inspected the seized materials and similarly determined that there were 69 marijuana plants.  He described 18 of the plants as being "in early bud" (tag number 28), and 51 of the plants as being "rooted cuttings in various stages of vegetative development" (tag number 31).  The Michigan State Police forensic laboratory also analyzed the 18 plants under tag number 28 and determined that they were all marijuana.  The forensic report does not mention the other 51 plants under tag number 31.

The parties dispute how much marijuana *product* officers seized, however.  Detective Raschke's reported that detectives seized "over 20 pounds of processed marijuana."  Together, all of the marijuana plant material seized by the detectives — under tag numbers 17, 18, 20, 21, 22, 32, 43, 44, and 45 — did, in fact, weigh more than 20 pounds.  The Michigan State Police forensic laboratory appears to have analyzed only a portion of the material — that under tag numbers 32 and 45 — which together weighed 4,728 grams, or 10.42 pounds.  The plaintiffs' expert weighed

all the plant material but contended that only a small portion of it was "usable."  According to the expert's analysis, the marijuana under tag number 32 was not usable because it was still in the process of being dried at the time it was seized, and the marijuana under tag number 45 could not be analyzed because it was still attached to stalks that accounted for more than 30 percent of the material's weight.  The expert testified that the only usable marijuana was under tag numbers 17, 18, and 20, which together weighed about 13 ounces.  Almost all of the marijuana product was seized from the Elizabeth Street duplex, including all products tagged under numbers 17, 18, 20, 21, 22 and 32.

The parties also dispute how many valid medical marijuana cards — that is, documentation establishing a relationship between the Hamanns as caregivers and those patients for whom they were supplying medical marijuana — the plaintiffs presented to the WWNT.  John Hamann said that he had four valid caregiver cards and one valid patient card at the time of the raid.  Records from the Michigan Department of Licensing and Regulatory Affairs (LARA) corroborate John's testimony.  However, John had only three valid caregiver cards in his possession on May 4, 2015. Ronald Hamann gave conflicting testimony, stating both that he held one patient and one caregiver card at the time of the raid, and that he had seven valid cards in total.  LARA records show that Ronald in fact was registered for four cards.  But officers found just two cards in Ronald's wallet, only one of which was valid, and four expired cards in his car.  John, meanwhile, testified that Ronald had zero cards and that all of the marijuana grown at the Elizabeth Street duplex was his.

The same day officers executed the search warrants, Michigan State Police trooper Benjamin Garrison drafted and swore to warrants to seize and freeze three of Ronald Hamann's financial accounts.  Garrison used information discovered during the Elizabeth Street raid to support his affidavit.  Livonia detective Lowes similarly relied on that information to prepare and

swear to an affidavit to seize and freeze John Hamann's credit union account. The accounts frozen by officers included a retirement account not related to the medical marijuana grow operation.

The Wayne County Prosecutor's office brought a forfeiture action against the seized property belonging to Ronald and John Hamann on September 2, 2015. The complaint was signed and filed by defendant Mahmoud Awad, an assistant Wayne County prosecutor, under Michigan Compiled Laws §§ 600.3801 and 333.7521. The lawsuit was dismissed on December 3, 2015, because the prosecutor's office failed to serve the plaintiffs and the summons expired.

C.  State Court Proceedings

About two years later, on March 10, 2017, the three plaintiffs each were charged in the 29th District Court in Wayne, Michigan, with two counts of manufacturing and delivering between five and 45 kilograms of marijuana. Detective Raschke signed the felony complaint. On June 19, 2017, Canton Police Officer Jessica Nuottila arrested John Hamann at Detroit Metropolitan Wayne County Airport on a felony warrant issued in connection with those charges. John Hamann subsequently was charged with one count of manufacturing and delivering marijuana in the 21st District Court in Garden City, Michigan. Ronald turned himself in following John's arrest and was arraigned on two counts on June 21, 2017. Hapman was not arrested or detained.

Later that year, on November 16, 2017, defendant Mahmoud Awad, an assistant Wayne County prosecutor, filed a motion in the Wayne County, Michigan circuit court to reinstate the civil forfeiture action against Ronald and John Hamann's property. In support of his motion, he swore to an affidavit that good cause existed to reinstate the forfeiture action. The forfeiture action against the property was reinstated on December 1, 2017.

On February 26, 2018, a state district judge in 21st District Court found that the search warrant for the Rush Street address was defective because probable cause for the warrant was

"remarkabl[y] deficient, almost ridiculously deficient." 21st Dist. Ct. Hr'g Tr., ECF No. 89-18, PageID.1489. He dismissed the criminal charge against John Hamann. Shortly thereafter, the Wayne County prosecutor's office moved in the 29th District Court to dismiss without prejudice all charges against the plaintiffs related to the search of the Elizabeth Street duplex; those charges ultimately were dismissed on April 2, 2018. Finally, on May 11, 2018, a Wayne County circuit judge ordered that Ronald and John Hamann's property be returned to them because the forfeiture claim failed to conform with the statutory timing and prompt filing requirements, and because the underlying search of the Rush Street address lacked probable cause.

### D. The Case in This Court

The plaintiffs filed the present lawsuit on April 4, 2020 against Van Buren Township, Canton Township, the Cities of Livonia and Wayne, and police officers Raschke, Zinser, Lowes, Hughes, and Garrison under 42 U.S.C. § 1983. They amended the complaint on September 29, 2020, adding Wayne County assistant prosecutors DeYoung and Awad. The amended complaint alleges that defendants Raschke, Zinser, Lowes, Hughes, Garrison, and DeYoung unlawfully searched and seized their property in violation of the Fourth Amendment (Count 1); Raschke unlawfully arrested them without probable cause in violation of the Fourth Amendment (Count 2) and state law (Count 3); Raschke maliciously prosecuted them in violation of the Fourth Amendment (Count 4) and state law (Count 5); the individual defendants were grossly negligent during the investigation, searches, and seizures (Count 6); the municipal defendants violated the plaintiffs' constitutional rights by failing to train, supervise, and discipline the individual defendants and by maintaining a custom or policy of falsely arresting citizens (Count 7); and defendant Awad deprived the plaintiffs of liberty and property without due process in violation of the Fourteenth Amendment (Count 8).

The City of Wayne and defendant Hughes (the Wayne defendants) and Michigan State Trooper Garrison each filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Canton Township and defendant Zinser (the Canton defendants) and the City of Livonia and defendant Lowes (the Livonia defendants) each filed motions for judgment on the pleadings. The Court granted all five motions, finding that the plaintiffs' search-and-seizure claims were untimely. The Court dismissed Counts 1, 6, and 7 of the amended complaint, and dismissed Garrison and the Wayne, Canton, and Livonia defendants from this lawsuit.

Defendants Raschke and Van Buren now have moved for summary judgment, as have defendants DeYoung and Awad.

## II.  Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute.  *Id.* at 558 (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make

an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Instead, that party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The party who bears the burden of proof must present a jury question as to each element of its claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). It must be emphasized, however, that "[i]n evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *PDV Midwest Ref., LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

A. Time-barred Claims Against Defendants Raschke, Van Buren Township, and DeYoung

Defendants Raschke and Van Buren piggyback on the statute of limitations arguments raised in the earlier motions by the other defendants, which resulted in the dismissal of Counts 1, 6, and 7 of the amended complaint against them. Defendant DeYoung likewise asserts that she is entitled to judgment as a matter of law because the only claims against her, Counts 1 and 6, were

-10-

already dismissed by the Court.  Raschke also argues that Count 3 is time-barred under Michigan Compiled Laws § 600.5805(3), which establishes a two-year statute of limitations for false imprisonment claims.

The plaintiffs agree that their state-law false-arrest claim (Count 3) should be dismissed under the statute of limitations.  Nevertheless, they argue that their gross negligence (Count 6) and failure-to-train claims (Count 7) survive as to Raschke and Van Buren Township.  They contend that the Court only dismissed these claims as relates to the search and seizure of their property, not to other conduct.  But they do not specify what this other conduct may be.  The plaintiffs also argue that their claim against DeYoung is not barred by the statute of limitations because it was reasonably foreseeable that DeYoung's approval of the legally deficient Rush Street search warrant and affidavit would cause the plaintiffs to be falsely arrested and their property unlawfully held.

The plaintiffs' timeliness arguments are unconvincing.  They have not presented any valid reasons why they should escape the three-year statute of limitations bar on Counts 1, 3, 6, and 7. Read generously, their responses appear to argue that Counts 1, 6, and 7 did not accrue as to the remaining defendants until the plaintiffs were arrested and their property was seized.  But the Court already settled that question when it determined that the three claims accrued on May 4, 2015, the date the search and seizure of the plaintiffs' properties took place.  *Hamann v. Charter Twp. of Van Buren*, 2021 WL 534487, at *5-6 (E.D. Mich. Feb. 11, 2021).

The plaintiffs' state-law false arrest claim (Count 3) is also time-barred, which the plaintiffs acknowledge.  Under Michigan law, "the period of limitations is 2 years for an action charging assault, battery, or false imprisonment." Mich. Comp. Laws § 600.5805(3).  The statute of limitations period begins to run on date of arrest.  *Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir.

2005). John Hammond's second arrest was in June 2017. The statute of limitations for the plaintiffs' state-law false arrest claim would therefore have lapsed in June 2019, and this case was not commenced until April 2020.

### B. Fourth Amendment Claims Against Raschke

Plaintiffs John and Ronald Hammond brought claims against defendant Raschke under the Fourth Amendment for unlawful arrest (Count 2) and malicious prosecution (Count 4). Raschke argues that he is entitled to qualified immunity from those claims. Once that defense is raised, the plaintiff is obliged to demonstrate both that the challenged conduct violated a constitutional right and that the right was clearly established at the time. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)). "If the plaintiff fails to establish either element, the defendant is immune from suit." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). However, when the qualified immunity defense is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott v. Harris*, 550 U.S. 372, 378 (2007). That means that the Court must view the facts in the light most favorable to the plaintiff, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott*, 550 U.S. at 378.

Raschke is entitled to summary judgment on the plaintiffs' Fourth Amendment claims because there was probable cause to arrest and prosecute them. Probable cause was supplied by the large quantities of marijuana plants and material in their possession, and from evidence that John sold marijuana to people who were not their patients. As to Lisa Hapman, she was not arrested or detained and thus does not have a false arrest or malicious prosecution claim.

To show that an arrest was unconstitutional, the plaintiffs must prove that the arresting officer lacked probable cause to arrest them. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Similarly, a malicious prosecution under federal law also requires that the plaintiffs prove a lack of probable cause. *Id.* at 308. Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). An officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (citations omitted). "[E]ven if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011). And when, as here, the arrest is based on a facially valid warrant issued by a magistrate, the officer is afforded "a complete defense" to an unlawful arrest claim, unless the plaintiff can prove that the arresting officer "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)).

There is nothing in the record that suggests that Raschke made false statements or material and misleading omissions in his search warrant affidavit. He reported the facts as he saw them. It is true that he did not mention that the Hamanns were licensed medical marijuana growers. But that fact does not immunize them from arrest or prosecution.

The Michigan Medical Marihuana Act (MMMA) "does not abrogate state criminal prohibitions related to marijuana," but rather "constitutes a 'very limited, highly restricted exception to the statutory proscription against the manufacture'" of marijuana in Michigan. *People v. Brown*, 297 Mich. App. 670, 676-77, 825 N.W.2d 91, 94 (2012) (quoting *People v. King*, 291 Mich. App. 503, 509, 804 N.W.2d 911, 915 (2011), *rev'd in part on other grounds by People v. Kolanek*, 491 Mich. 382, 817 N.W.2d 528 (2012)). The MMMA thus provides immunity from arrest and prosecution *only* to qualified caregivers who comply with its provisions, including by (1) possessing no more than 2.5 ounces of usable marijuana per qualified patient to whom they are connected through the state registration process, (2) cultivating no more than 12 marijuana plants per qualified patient to whom they are connected through the state registration process, and (3) keeping that marijuana plants in an enclosed, locked facility. Mich. Comp. Laws § 333.26424. The MMMA also requires qualified patients and caregivers to "present[]" valid registry identification cards. *Ibid.*

Construing the facts in the light most favorable to the plaintiffs, a reasonable officer could have believed that he had probable cause to arrest and prosecute them for violating state criminal prohibitions related to marijuana. No matter how the evidence is viewed, the plaintiffs possessed a large quantity of marijuana plants, more than they were allowed to possess under the MMMA. Even if what John Hamann says is true, and all the plants belonged to him, John legally could cultivate no more than 60 plants—twelve under each of the four valid caregiver cards he said he had, and twelve under his own patient card, Mich. Comp. Laws § 333.26424. Yet officers recovered 69 plants from the Elizabeth Street duplex. Moreover, John only presented three valid caregiver cards and did not present a valid patient card as required under Section 4 of the MMMA. *Ibid.* ("The privilege from arrest under this subsection applies only if the qualifying patient

-14-

presents . . . his or her registry identification card . . . ."); *see also Fineout v. Kostanko*, 780 F. App'x 317, 328 (6th Cir. 2019) (finding that officers had probable cause to arrest an individual who was unable to display registration cards).   Alternatively, if some of the plants belonged to Ronald Hamann, as he and Lisa Hapman stated, then the plaintiffs were in clear violation of the MMMA's requirement that caregivers cultivate plants in "an enclosed, locked facility."  Mich. Comp. Laws § 333.26424(b)(2).  The MMMA affords no immunity to caregivers who "grow[] marijuana collectively with other registered primary caregivers and registered qualifying patients." *People v. Bylsma*, 493 Mich. 17, 21, 825 N.W.2d 543, 545 (2012).  Furthermore, John and Ronald Hamann's shared access to the Elizabeth Street duplex granted them both constructive possession over all of the plants cultivated there. *Id.* at 493 Mich. at 31-32, 825 N.W.2d at 550.

The plaintiffs also possessed a large quantity of marijuana plant material — again, far more material than was permissible under the MMMA.   Officers seized more than 20 pounds of marijuana from the Elizabeth Street duplex.  The plaintiffs contend that most of this product was not "usable" under the MMMA because it was too wet.  Mich. Comp. Laws § 333.26423(o). ("'Usable marihuana' means the *dried* leaves, flowers, plant resin, or extract of the marihuana plant, but does not include the seeds, stalks, and roots of the plant.") (emphasis added.)  But even if they prevailed on this point, the plaintiffs nevertheless lost their section 4 immunity by possessing more marijuana plants than they were authorized to cultivate.  Moreover, officers noted in their search records that the plaintiffs together possessed or presented only four valid caregiver or patient cards, which would authorize them to possess only 10 ounces of usable marijuana.  Yet according to the plaintiffs' own expert, at least 13 ounces of the marijuana that officers seized from the duplex was usable, again placing the plaintiffs out-of-compliance with the MMMA.

Finally, the plaintiffs supplied officers with evidence that they sold marijuana to people who were not their patients.  A caregiver loses his section 4 immunity if he possesses or transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient with whom the caregiver was connected through the state registration process.  Mich. Comp. Laws § 333.26424; *Bylsma*, 493 Mich. at 21–22, 825 N.W.2d at 545; *State v. McQueen*, 493 Mich. 135, 158, 828 N.W.2d 644, 656 (2013).  The plaintiffs dispute whether John Hamann admitted to Detective Raschke that he sold marijuana to people who were not his registered patients.  But they do not dispute the text messages officers recovered from John's phone, which imply that he was doing exactly that.

Because there was probable cause for prosecuting the plaintiffs, Detective Raschke is entitled to qualified immunity on the Fourth Amendment malicious prosecution claim.  But even if that were not the case, summary judgment would be appropriate because no genuine fact remains for trial on whether Raschke "participated" in the decision to prosecute.  The Sixth Circuit is "absolutely clear . . . that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*, 625 F.3d at 314 (emphasis in original). Nothing in the record suggests that Raschke did anything other than turn over his report and affidavit to the prosecutor.  Based on the record in this case, that report appears to be truthful: officers in fact did seize more than 20 pounds of processed marijuana, Telewski Report, ECF No. 93-23, PageID.1848; they in fact did find four expired medical marijuana cards, Elizabeth St. Log, ECF No. 89-7, PageID.1395; and Lisa Hapman in fact did state that she cared for both Ronald and John's plants, Hapman dep., ECF No. 89-5, PageID.1362.  That Raschke did not contextualize

these facts to the plaintiffs' liking does not mean that he provided prosecutors with false information.  Raschke never even testified in court.

Nor have the plaintiffs demonstrated that Raschke fabricated anything in the Elizabeth Street search warrant affidavit, every detail of which has been corroborated by the plaintiffs themselves.  Ronald Hamann stated that passersby could smell marijuana outside the duplex, that there was a security camera on the duplex, that three air conditioning units were affixed to the duplex, and that black grow pots were stacked in the back yard.  Ronald Hamann dep., ECF No. 89-4, PageID.1311-13.  John Hamann also stated that three air conditioning units were affixed to the duplex and that duplex windows had been blacked out.  John Hamman dep., ECF No. 89-6, PageID.1373.  Lisa Hapman similarly testified to the smell, blacked-out windows, and air conditioners.  Hapman dep., ECF No. 89-5, PageID.1355-56.  The plaintiffs cannot pinpoint a single misstatement or falsehood Raschke knowingly made in any of the materials he turned over to prosecutors.

Viewing the facts in the record in the light most favorable to the plaintiffs, defendant Raschke is entitled to qualified immunity from the claims against him in Counts 2 and 4 of the amended complaint.

### C.  State Law Claim Against Raschke

The plaintiffs' state-law malicious-prosecution claim against Detective Raschke fails for a similar reason: the plaintiffs cannot show that Raschke knowingly swore to false facts for which there is no probable cause.  *Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014).

Raschke is also entitled to governmental immunity.  Malicious prosecution is an intentional tort.  *Odom v. Wayne Cnty.*, 482 Mich. 459, 480-81, 760 N.W.2d 217, 228 (2008).  Therefore, governmental immunity protects him only if Raschke can show (1) that he was acting in the course

of his employment and at least reasonably believed that he was acting within the scope of his authority; (2) that his actions were discretionary, not ministerial, in nature; and (3) that he acted without malice and in good faith. *Ibid.* Raschke easily makes that showing. He was acting in the course of his employment as a police detective throughout the relevant events. He engaged in significant deliberation and decision-making when investigating the plaintiffs and drafting and swearing to the search warrant affidavit. *Ross v. Consumers Power Co.*, 420 Mich. 567, 634, 363 N.W.2d 641, 668 (1984). He honestly believed that he had probable cause to arrest the plaintiffs, and there is no evidence that he acted in bad faith. Governmental immunity shields Raschke from the plaintiffs' state-law malicious prosecution claim in Count 5 of the amended complaint.

### D. Due Process Claim Against Awad

Defendant Mahmoud Awad argues that because he was acting as an assistant prosecuting attorney when he initiated and revived the civil forfeiture action against the Hamanns, he is entitled to absolute and qualified immunity. He contends that absolute immunity applies to prosecutors who bring civil forfeiture cases and that drafting civil forfeiture complaints and motions are traditional prosecutorial functions. He also argues that qualified immunity protects him from suit because the plaintiffs did not have a clearly established right to be free from civil forfeiture while their underlying criminal matter was pending. Neither of these arguments is persuasive.

It is true that "prosecutorial immunity extends to proceedings where the prosecutor institutes a civil forfeiture proceeding." *Blakely v. United States*, 276 F.3d 853, 871 (6th Cir. 2002); *see also Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (conferring prosecutorial immunity for filing a civil forfeiture complaint). However, "[t]estifying about facts is the function of the witness, not of the lawyer," and prosecutors are not protected by absolute immunity when they vouch for the truth of allegations in a complaint. *Kalina v. Fletcher*, 522 U.S. 118, 132 (1997).

The Sixth Circuit has interpreted *Kalina* to preclude prosecutorial immunity for prosecutors who "swear[] to the truth of the factual allegations in . . . civil forfeiture complaints." *Cooper*, 203 F.3d at 949. That is precisely what Awad did here: swear to the truth of the contents of his motion to reinstate the civil forfeiture case against the plaintiffs. Awad Aff., ECF No. 93-17, PageID.1789. He was not required by law to make that attestation. Michigan's public nuisance regulations, Mich. Comp. Laws § 600.3801, do not "*require* that a [prosecutor] swear to the truth of allegations contained in a complaint." *Cooper*, 203 F.3d at 949; *see also Kalina*, 522 U.S. at 129 ("Although the law required that document to be sworn or certified under penalty of perjury, neither federal nor state law made it necessary for the prosecutor to make that certification."). Rather, in vouching for the allegations in the motion, Awad "performed 'an act that any competent witness might have performed[,]'" depriving him of the protection of absolute immunity. *Cooper*, 203 F.3d at 949 (quoting *Kalina*, 522 U.S. at 129-130).

It follows from *Kalina* that "[a] prosecutor is entitled to only qualified immunity when []he acts as a complaining witness by making sworn statements to the court in support of a criminal complaint." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (citing *Kalina*, 522 U.S. at 129-31). Civil forfeiture implicates the clearly established federal and state constitutional right to due process. *See, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993). For that reason, Michigan courts "strictly construe [Mich. Comp. Laws] § [333.]7523 as requiring the prompt institution of in rem forfeiture proceedings to ensure that the due process rights of the claimants are protected." *In re Forfeiture of One 1983 Cadillac*, 176 Mich. App. 277, 280, 439 N.W.2d 346, 348 (1989).

The plaintiffs have raised a genuine question of material fact on whether the forfeiture action reinstated by assistant prosecutor Awad violated their due-process rights. Michigan

Compiled Laws § 333.7523(1)(c) requires that a prosecuting attorney or other designated official "shall promptly institute forfeiture proceedings after the expiration of the 20-day period" for claimants to object to forfeiture. "[T]he word 'shall' connotes a mandatory duty imposed by law." *Lenawee Prosecutor v. One 1981 Buick 2-Door Riviera*, 165 Mich. App. 762, 767, 419 N.W.2d 458, 460 (1988). To determine if proceedings are "prompt," Michigan courts use a balancing test, weighing "'the lapse of time between seizure and filing of the complaint, the reason for the delay, the resulting prejudice to the defendant and the nature of the property seized.'" *In re Forfeiture of One 1983 Cadillac*, 176 Mich. App. at 281, 439 N.W.2d at 348 (quoting *Dep't of Natural Resources v. Parish*, 71 Mich. App 745, 750; 249 N.W.2d 163 (1976)). Applying that balancing test, courts have found that delays of more than a few months are not prompt. *Ibid.* (a four-month delay was not prompt); *Lenawee Prosecutor v. One 1981 Buick 2-Door Riviera*, 165 Mich. App. 762, 766, 419 N.W.2d 458, 460 (1988) (a six-and-a-half-month delay was not prompt).

Here, the delay in reinstituting the forfeiture complaint was more than two years, and there was no good reason for it. In his affidavit filed in support of the motion Awad swore that he had good cause to reinstate the woefully tardy forfeiture action. Yet, he was unable to back up that conclusion. He admitted that he could not explain why it took two years to file the motion to reinstate the forfeiture action, beyond that it "probably slipped in the cracks." Awad dep., ECF No. 95-1, PageID.1995. He further acknowledged that "courts have ruled" that the timeline for filing a forfeiture complaint is "within four months," that his office "tried to stick within four months," and that he did not do so in the plaintiffs' case simply because "my time was very limited at that point because we were very low in people." *Id.* at 1994. A Wayne County circuit judge also found that the forfeiture case did not "confirm with the statutory timing requirement" and was not promptly filed; he ordered the return of the plaintiffs' property for that reason. There are

therefore ample facts upon which a jury could conclude that assistant prosecutor Awad violated the plaintiffs' clearly-established Fourteenth Amendment due process rights.  Awad is not entitled to qualified immunity on the plaintiffs' due process claim.

### III.  Conclusion

The plaintiffs' claims that have been dismissed as time-barred are likewise time-barred against the defendants that remain in the case and must be dismissed against them as well.  The plaintiffs acknowledge that their state-law malicious prosecution claim against defendant Matthew Raschke also is time-barred.  Raschke is entitled to qualified immunity on the remaining Fourth Amendment claims, and governmental immunity shields him from the related state law tort claim, which also fails on the merits.  However, assistant prosecutor Awad is entitled to neither prosecutorial nor qualified immunity.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendants Van Buren Township and Matthew Raschke (ECF No. 89) is **GRANTED**.

It is further **ORDERED** that the motion for summary judgment by defendants Sarah DeYoung and Mahmoud Awad (ECF No. 95) is **GRANTED IN PART and DENIED IN PART**.

It is further **ORDERED** that all remaining counts of the amended complaint, **except** Count 8 against defendant Awad, are **DISMISSED WITH PREJUDICE**, and all remaining defendants, except defendant Awad, are **DISMISSED** as defendants from this action.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  November 15, 2021